1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| UNITED STATES OF AMERICA, on behalf of its agencies, DEPARTMENT of the NAVY, THE DEFENSE THREAT REDUCTION AGENCY, THE UNITED STATES NATIONAL NUCLEAR SECURITY ADMINISTRATION, and the FEDERAL BUREAU OF INVESTIGATION, | CASE NO. COMPLAINT FOR INJUNCTIVE RELIEF |
| PLAINTIFFS, | |
| v. | |
| KITSAP COUNTY and the KITSAP COUNTY DEPARTMENT OF EMERGENCY MANAGEMENT, | |
| DEFENDANTS. | |

24
25
26
27
28

## INTRODUCTION

1.      This is an action by the United States of America, on behalf of its agencies, the

Department of the Navy, the Defense Threat Reduction Agency, the National Nuclear

Security Administration, and the Federal Bureau of Investigation (collectively, the "Federal

1   Agencies") against Defendants Kitsap County ("Kitsap County") and the Kitsap County

2   Department of Emergency Management ("Kitsap Emergency Management", collectively,

3   "Kitsap County" or "Defendants").  The Federal Agencies seek an Order enjoining

4   Defendants from disclosing sensitive and protected national security information in response

5   to requests Kitsap Emergency Management received under the Washington State Public

6   Records Act ("PRA"), RCW 42.56 et seq., and providing declaratory judgment, pursuant to

7   the Declaratory Judgment Act, 28 U.S.C. § 2201.

8        2.     Kitsap Emergency Management obtained sensitive and protected national

9   security information from the Federal Agencies when it participated with other state and local

10  emergency response agencies in various federally administered Nuclear Weapon Accident

11  Incident Training Exercises ("NUWAIXs") conducted on Naval Base Kitsap Bangor, in

12  Kitsap County, Washington.  In connection with these NUWAIXs, participants from state,

13  county and local agencies were provided access to federally protected sensitive national

14  security information on the condition that the information would be used solely for purposes

15  of the exercise, and not disclosed for any other  purpose without the consent of the Federal

16  Agencies.

17       3.     In addition to the express conditions placed on Kitsap Emergency

18  Management's  access to the federally protected sensitive national security information, the

19  information is also covered by two federal non-disclosure statutes: 10 U.S.C. § 128,

20  prohibiting unauthorized disclosure of unclassified nuclear information ("UCNI Statute"), and

21  10 U.S.C. § 130e, prohibiting unauthorized disclosure critical infrastructure security

22  information ("CISI Statute").

23       4.     Although the federal non-disclosure UCNI and CISI statutes would pre-empt

24  any state mandatory disclosure obligation laws to the contrary, no pre-emption issue arises in

25  Washington State, because the PRA's mandatory public disclosure provisions excludes

26  information or records protected from disclosure by a federal statute.  *See* RCW 42.56.070(1)

27  (excluding information protected from disclosure by "other statutes").

28

5.      Furthermore, the Washington State legislature has also created a specific PRA exemption for "security information," exempting from the mandatory public disclosure provisions of the PRA precisely the kind of emergency response information that is at issue in this case.  *See* RCW 42.56.420.

6.      In spite of these state exemptions and federal non-disclosure laws, which make it clear that the PRA's mandatory disclosure provisions do not apply to the sensitive national security information at issue in this case, Defendants have notified the Federal Agencies that they intend to unilaterally release the national security protected information to the requesters if the Federal Agencies do not obtain by December 16, 2015, an Order enjoining Defendants from doing so.

7.      The imminent threat that Defendants will unlawfully disclose the sensitive protected federal information at issue in this case has forced the Federal Agencies to initiate this lawsuit for injunctive and declaratory relief.  Such relief is authorized as a matter of federal statute and federal common law.  It is also available under the provisions of the PRA, which make injunctive relief available for third parties, to prevent state and local agencies from making unauthorized disclosures of sensitive information covered by PRA exemptions.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1345.

9.      Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants reside and transact business within the Western District of Washington, the events complained of occurred in the Western District of Washington, and the threats complained of will occur there.  Finally, the records that the Federal Agencies seek to protect are located in the Western District of Washington in Defendants' possession.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**PARTIES**

10.     The United States Department of the Navy (the "Navy") is a Department of the United States Department of Defense.  The Navy owns and operates Naval Base Kitsap, a U.S. Navy base located on the Kitsap Peninsula in Washington State, which was created in 2004 by merging four separate installations within Kitsap County under one Commanding Officer.  The Mission of Naval Base Kitsap is to serve as the home base for the Navy's fleet throughout West Puget Sound and to provide base operating services.  Naval Base Kitsap Bangor serves as the home port of the Navy's Pacific fleet of eight *Ohio*-class submarines that are capable of launching TRIDENT missiles, and is the only installation on the West Coast that is equipped to support that fleet.  The TRIDENT program, which includes the *Ohio*-class submarines, plays a critical role in the United States' program of nuclear deterrence, which is a critical component of national security.

11.     The Defense Threat Reduction Agency ("DTRA") is an agency within the United States Department of Defense and is the official combat support agency for countering weapons of mass destruction (chemical, biological, radiological, nuclear, and high explosives).  DTRA's main functions are threat reduction, threat control, combat support, and technology development.

12.     The Federal Bureau of Investigation (the "FBI") is the domestic intelligence and security service of the United States, which simultaneously serves as the nation's primary federal law enforcement organization.  Operating under the jurisdiction of the U.S. Department of Justice, FBI is concurrently a member of the U.S. Intelligence Community and reports to both the Attorney General and the Director of National Intelligence.  A leading U.S. counterterrorism, counterintelligence, and criminal investigative organization, the FBI has jurisdiction over violations of more than 200 categories of federal crimes.

13.     The United States National Nuclear Security Administration ("NNSA") is a semi-autonomous agency of the United States Department of Energy.  It works to improve national security through the military application of nuclear energy.  The NNSA maintains

and improves the safety, reliability, and performance of the United States nuclear weapons stockpile through the use of science, technology, and engineering.  It is also responsible for many nuclear nonproliferation, counter-terrorism, counter-proliferation, and radiological emergency response efforts for the United States, along with the naval reactors for the Navy.

14.     Defendant Kitsap County is located in the State of Washington.  As of the 2010 census, its population was 251,133.  Its county seat is Port Orchard, and its largest city is Bremerton.  The Navy is the largest employer in the county, with facilities and naval activities located at four Naval Base Kitsap sites (Naval Base Kitsap Bremerton, Naval Base Kitsap Bangor, Naval Base Kitsap Keyport and Naval Base Kitsap Manchester).

15.     Defendant Kitsap Emergency Management is a component of Kitsap County.  Kitsap Emergency Management is responsible for providing the emergency and disaster needs of the greater Kitsap County area including the cities of Bainbridge Island, Bremerton, Poulsbo, Port Orchard and the unincorporated areas of Silverdale.

## ALLEGATIONS

### NUWAIX Training Exercises

16.     The consequences of a nuclear weapon accident or incident pose a serious threat to national security and public safety.  The Federal Agencies have developed procedures for responding to such incidents.  Under these procedures, all nuclear weapon incidents shall be considered the result of hostile acts until proven otherwise.  These procedures, therefore, outline the steps for investigating such incidents, as well as the steps for mitigating the damage.  In order to improve preparedness and response capabilities, the Federal Agencies conduct periodic training exercises under the Nuclear Weapon Incident Training ("NWIRT") program.  These exercises are designed to establish a learning environment to practice responding to simulated incidents.  The exercises also provide the agencies the opportunity to evaluate and assess response times and effectiveness so that improvements may be made to the procedures.  The exercises usually involve the participation of state and local departments

COMPLAINT - 5

1  and agencies because state and local partners would be an integral part of any emergency

2  response.

3      17.    In particular, as part of the NWIRT program, the Navy together with DTRA,

4  NNSA, and the FBI conduct periodic training sessions at Naval Base Kitsap Bangor, entitled

5  Nuclear Weapons Accident Incident Exercises "NUWAIXs").  As relevant to this case,

6  various training sessions began in July 2013 with a series of five Mini-NUWAIX sessions –

7  which took place in July 2013, Sept. 2013, June 2014, September 2014, and October 2014.

8  These mini-exercises culminated in a full scale emergency training exercise known as

9  NUWAIX 15, which took place May 5-7, 2015.

10      18.    Kitsap Emergency Management was invited together with several other state

11  and local agencies with emergency response responsibilities to participate in these emergency

12  training exercises.  Because a significant amount of the information related to the training was

13  sensitive national security information, Navy Region Northwest ("NRNW"), repeatedly

14  informed Kitsap Emergency Management and the other participants of their obligation to

15  protect the information and not release the information to third parties.  For example, the

16  introductory materials provided to Kitsap Emergency Management and other participants for

17  the Mini-NUWAIX 2014-01 stated as follows:

18
19
20
21
22
23

The NRNW Mini-NUWAIX 2014-01 is an unclassified exercise. Due to the nature of the event, some exercise material and player discussions, however, in the Region Operations Center and site locations could be classified SECRET.  All precautions must be taken to safeguard classified information.  Also there may be some exercise material intended for the exclusive use of exercise planners and evaluators, but players may view other materials that are deemed necessary to their performance. . . .

24
25
26

All Exercise participants should use appropriate guidelines to ensure proper control of information within their areas of expertise and protect this material in accordance with current DOD/NORTHCOM/FBI/DOE/FEMA directives.

27

Public release of exercise materials to third parties is at the discretion of NRNW.

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

19.     Other documents provided to Kitsap Emergency Management contained similar language emphasizing the confidentiality of the information relating to the exercises. In addition, many documents themselves were marked for "OFFICIAL USE ONLY" and contained warnings that they "may contain information that requires protection from unauthorized disclosure" and not to disseminate "to anyone who does not have an official need for access."  Accordingly, there was no question that Kitsap Emergency Management and other state and local agencies who participated in the training exercises, received sensitive national security information with the understanding that the information was confidential and the federal government retained control of its dissemination.

*Public Record Act Request to Kitsap County*
*Department of Emergency Management*

20.     On January 15, 2015, Glen Milner ("Milner") submitted a request to Kitsap Emergency Management under the Washington Public Records Act ("PRA"), RCW 42.56.001 et seq.   He sought all records "since January 1, 2012 regarding the consequences of a radiological accident or similar event at the Naval Base Kitsap Bangor and other U.S. Navy facilities, and emergency responses for such an event."

21.     On April 29, 2015, the Kitsap County Prosecuting Attorney's Office sent a letter to the NRNW Commander notifying the Navy that it had determined that there were federal records responsive to Milner's request and advising that the responsive records would be released unless the federal government obtained a court order enjoining the release of the records.  In response to the Navy's request, the County agreed to provide the federal government with an opportunity to review the documents and provided the Navy with 356 documents consisting of approximately 6000 pages on May 18, 2015.  The documents at issue include PowerPoint presentations, reports, exercise plans and scenarios, spreadsheets listing time lines for scenarios, contact lists, minutes of planning meetings, and emails.  The Navy and DTRA reviewed these documents to identify statutorily protected information, and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  delivered a set of the records to the NNSA and the Chief Division Counsel at the Seattle

2  Division of the FBI for their review.

3        22.     In June 2015, the United States Attorney's Office for the Western District of

4  Washington ("USAO") was asked by the Federal Agencies to become involved.  In an effort

5  to narrow the issues in dispute, the Federal Agencies prepared an index of the documents

6  which was provided to Milner.  Milner then agreed to narrow the records to those of interest

7  to him, eliminating approximately 49 documents from a total of 356.

8        23.     From this narrowed set of records, the Federal Agencies focused first on

9  identifying records which did not contain any sensitive information involving national

10  security so that the County could immediately produce such records to Milner.  The Federal

11  Agencies provided the County with a number of documents that could be released without

12  redaction, but the County did not provide all of these "cleared" documents to Milner.  The

13  County was concerned that if it provided Milner with a record, such as an attachment to an

14  email that did not contain sensitive information, without also providing all the other

15  attachments to the email, as well as the email, the County might be subject to penalties

16  under the PRA for producing an "incomplete" document.  Because of the County's concern

17  about violating the PRA, Milner would wait several more months before the Federal

18  Agencies, on their own, provided Milner with a set of the documents that could be released in

19  their entirety, together with redacted versions of the documents containing sensitive national

20  security information.

21        24.     On September 22, 2015, the Federal Agencies provided the County a draft

22  *Vaughn* Index[1] listing the documents which needed to be withheld either in whole or in part,

23  and also provided the County a DVD with versions of documents that the Federal Agencies

24

25  [1] The term *Vaughn* Index, comes from *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973), *cert.*
26  *denied*, 415 U.S. 977 (1974), which held that in connection with FOIA litigation, an agency should
   ordinarily provide an itemized index correlating each withheld document (or portion) with a specific
27  exemption justification.  *Vaughn* Indexes are ordinarily provided after litigation ensues, not during
   the administrative process.
28

proposed for release in redacted form.  On October 2, 2015, the USAO provided the County with a letter brief explaining in greater detail the bases for the Federal Agencies' withholdings under both state and federal law.

25.     The sensitive national security information that the federal agencies seek to protect falls into two categories: (1) critical and sensitive national security information regarding plans for responding to nuclear weapon accidents and incidents, and (2) the names of certain federal employees with special technical knowledge and expertise related to emergency response.

26.     The County agreed to review these materials and respond to the Federal Agencies' exemption claims.

27.     The County did not provide Milner with copies of the cleared and redacted documents because of its concern about violating the PRA.  Therefore, while waiting for the County to comment on their proposed withholdings, and after obtaining the County's agreement, the Federal Agencies provided Milner with a set of the proposed redactions and cleared records, and requested his comments.

28.     On November 15, 2015, Milner complained about the format of the documents he had received and made a number of demands about the level of detail he expected in the format of a *Vaughn* Index.  The Federal Agencies agreed to change the format of the redactions to address Milner's concerns, and update the *Vaughn* Index to address Milner's requests.

29.     On November 30, 2015, while the Federal Agencies were attempting to prepare updated redactions and an updated *Vaughn* Index to address Milner's requests, and without ever addressing the Federal Agencies' substantive exemption claims, the County sent the Federal Agencies a third-party notice informing them that the County would unilaterally release the records containing federally-protected sensitive national security information to Milner, and to Ed Friedrich, a reporter from the Kitsap Sun who had submitted a similar request to the County on October 19, 2015, if the Federal Agencies did not, by December 16, 2015, obtain a Court Order enjoining the County from doing so.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    30.    Therefore, the Federal Agencies have been forced to initiate this suit against the

2    County pursuant to the provisions of RCW 42.56.540, the provision of the PRA which grants

3    third parties the right to seek judicial relief to prevent Washington State and local

4    governmental entities from releasing records in which the third parties have a confidentiality

5    interest.  The Federal Agencies are also entitled to injunctive relief under federal common

6    law, both because the disclosure by the County would violate federal non-disclosure statutes

7    which protect the sensitive national security information, and because the County's

8    participation in the training exercise was conditioned on the County's use of the information

9    obtained from the exercise solely for purposes of the exercise, and not for secondary

10   unauthorized purposes.  Further, the Federal Agencies are entitled to declaratory relief

11   regarding the authority of the Federal Agencies with respect to certain information which

12   remains under their control, and the applicability of state exemptions to federally-protected

13   information.  Accordingly, the Federal Agencies seek a judicial determination that the

14   information they have designated for withholding is protected under federal and state law, and

15   the CISI in the records at-issue remains under the control of the Department of Defense

16   and/or the Navy, and an injunction barring the County from releasing the protected

17   information it now possesses and may receive in the future.

18                              **FIRST CAUSE OF ACTION**

19                       *RCW 42.56.540 Court protection of public records.*

20   31.    The PRA, RCW 42.56.540, authorizes third parties with an interest in the non-

21   disclosure of records to bring injunctive actions against governmental entities to prevent such

22   entities from releasing the records, if they can establish the records are protected either by

23   PRA exemptions or by other non-disclosure statutes or by common law rights, and the

24   disclosure of the records would irreparably damage vital governmental functions and not be

25   in the public interest.

26   32.    The release of the sensitive national security records at issue in this case would

27   irreparably damage vital governmental functions performed by the Federal Agencies and

28   would not be in the public interest.

COMPLAINT - 10

1    34.    The sensitive national security information at issue in this case constitutes

2  "security information" exempted from mandatory disclosure by RCW 42.56.420.  The very

3  purpose of the NUWAIX exercises was to prepare, assess, plan and prevent a terrorist attack.

4  Specifically, the records in this matter were prepared as part of multi-agency exercises that

5  involved preparing for and mitigating the consequences of a terrorist attack involving a U.S.

6  nuclear weapon.  The purpose of the training was to evaluate and assess response times, and

7  to establish an effective implementation and planning strategy for responding to terrorist

8  attacks involving a nuclear weapon or special nuclear material in order to protect the public

9  from the harm that could result from such incidents.  Thus, the first prong of RCW 42.56.420

10  is met.

11    35.    Pursuant to RCW 42.56.540, the United States is entitled to an Order from this

12  Court barring the Defendants from releasing the sensitive national security information at

13  issue in this case.

## SECOND CAUSE OF ACTION
*Unauthorized Release of UCNI*

16    36.    The United States realleges and incorporates by reference the allegations

17  contained in paragraphs 1 through 35 of this Complaint.

18    37.    The Department of Defense has determined that much of the sensitive national

19  security information at issue in this case constitutes unclassified controlled nuclear

20  information, known as UCNI, which is protected from disclosure by regulations promulgated

21  by the Secretary of Defense pursuant to 10 U.S.C. § 128.  *See* 32 C.F.R. Part 223.

22    38.    The UCNI regulations provide that UCNI may be disseminated only on a

23  "need-to-know basis for the conduct of official business for the Department of Defense."

24  32 C.F.R. § 223.6(e)(1).  The regulations prohibit "[t]he intentional or negligent transfer, in

25  any manner and by any person of information contained in a document or material determined

26  by a reviewing official to contain Department of Defense UCNI . . . to any person or entity

27  other than an individual or entity authorized access to Department of Defense UCNI in

28  accordance with 10 U.S.C. 128 and this part."  32 C.F.R. § 223.3(k).

COMPLAINT - 11

39.     The sensitive national security information at issue in this case has been determined by reviewing officials at the Navy and DTRA to constitute UCNI as provided for by the Department's regulations.  This information falls into the following categories: (1) information about the convoy route by which nuclear-capable missiles and warheads are transported on Navy property, and (2) incident response force information, including information about incident response force personnel, and the location or capacities of incident response force personnel, assets or equipment relied upon to respond to a radiological accident or incident.

40.     Qualified experts have determined that release of the UCNI at issue in this case "could reasonably be expected to have a significant adverse effect on the health and safety of the public or common defense and security by significantly increasing the likelihood of . . . theft, diversion, or sabotage of special nuclear materials, equipment, or facilities," 10 U.S.C. § 128(a)(2).  Further, such threats could negatively impact national security by impacting the Navy's ability to ensure the operability, reliability, safety and security of the TRIDENT missile system.

41.     Because disclosure of the information identified as UCNI in the records Defendants are proposing to release would violate the UCNI non-disclosure regulations, the Federal Agencies are entitled to an injunction prohibiting Defendants from disclosing such information.

### THIRD CAUSE OF ACTION
*Critical Infrastructure Security Information*
10 U.S.C. §130e

42.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 41 of this Complaint.

43.     The Navy also has determined that many documents contain information meeting the definition of CISI which is subject to protection from disclosure under 10 U.S.C. § 130e.  Section 130e defines CISI as "sensitive but unclassified information that, if disclosed, would reveal vulnerabilities in Department of Defense critical infrastructure that,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    if exploited, would likely result in significant disruption, destruction, or damage of or to

2    Department of Defense operations, property or facilities." 10 U.S.C. § 130e(c).  The

3    definition of CISI includes "information regarding security and safeguarding of explosives,

4    hazardous chemicals, or pipelines, related to critical infrastructure or protected systems

5    owned or operated by or on behalf of the Department of Defense, including vulnerability

6    assessments prepared by or on behalf of the Department of Defense, explosive safety

7    information (including storage and handling), and other site-specific information on or

8    relating to installation security." *Id*.  The statute provides that the Secretary of Defense may

9    exempt CISI from the FOIA upon a written determination that "(1) the information in

10   question meets the definition of CISI in the statute, and (2) "the public interest consideration

11   in the disclosure of such information does not outweigh preventing the disclosure of such

12   information." 10 U.S.C. § 130e(a).   In addition, the statute expressly provides that CISI

13   protected under subsection (a) "that is provided to state and local governmental agencies shall

14   remain in the control of the Department of Defense." *Id*. § 130e(b).

15         44.    The Defendants are prohibited from disclosing the CISI because it remains

16   under Department of Defense control.  Based on the review of the sensitive national security

17   information in this case, qualified experts at the Navy have determined that CISI information

18   at issue falls into two categories.  First, the Navy seeks to protect information regarding

19   convoy routes.  Disclosure of such routes could pose a direct threat to critical infrastructure

20   because, in the hands of a potential adversary, such information could be used to execute an

21   attack on specialized infrastructure on Naval Base Kitsap Bangor, including missile storage

22   and handling facilities and the security systems designed to protect those facilities.

23   Knowledge of the convoy route could allow a potential adversary to time its attack or target

24   its attack on a specific segment of the route.  Second, the Navy seeks to protect information

25   about the nuclear weapon incident response force (including information about the personnel,

26   assets and equipment relied upon to respond to a nuclear weapon incident and their location).

27   Information pertaining to the location of incident response force personnel, assets and

28   equipment could provide an adversary with an advantage over the security force essential to

COMPLAINT - 13

protecting the underlying infrastructure.  By incapacitating installation security forces or exploiting information pertaining to response force capabilities, an adversary could tailor an attack to maximize harm to the critical infrastructure.  Such threats to this critical infrastructure could negatively impact national security by impacting the Navy's ability to ensure the operability, reliability, safety and security of the TRIDENT missile system.

45.     The CISI statute requires the Secretary of Defense or the Director of Administration and Management to make a written determination that "the public interest consideration in disclosure does not outweigh preventing the disclosure of such information." 10 U.S.C. §130e(a).  Although this determination has not yet been made, the Navy has made a preliminary determination, as required by Department of Defense policy, and is in the process of obtaining a formal determination from that Department.  The Navy has submitted its formal request for a written determination to the Department of Defense.  Accordingly, the information is putatively CISI, and until the Department of Defense completes its review and issues a written determination, it must be protected.

46.  Defendants should be enjoined until the Director has had time to make a written determination that the information Defendants threaten to disclose constitutes CISI.

### FOURTH CAUSE OF ACTION
*Replevin of Records owned by Federal Agencies*

47.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 46 of this Complaint.

48.     Pursuant to the CISI statute, which expressly provides that CISI shared with the state and local governmental agencies shall remain within the control of the Department of Defense, the United States holds an ownership interest in all CISI records.  As a result of this statutory ownership interest in CISI, any right of the public to access to records containing CISI is not governed by state law, but is solely a matter of federal law under the Freedom of Information Act, 5 U.S.C. § 552.  Without the express permission of the Department of

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Defense (or a Department of Defense component, such as the Navy), the County is not at

2  liberty to release any CISI records pursuant to a request under a state statute such as the PRA.

3      49.    Furthermore, in this case, the sensitive protected national security information

4  was created by the Federal Government and shared with Defendants with the explicit

5  condition that the County "protect this material in accordance with

6  DOD/NORTHCOM/FBI/DOE/FEMA directives" and that "[p]ublic release of the exercise

7  material to third parties is at the discretion of the NRNW."

8      50.    The sensitive protected national security information was provided to

9  Defendants with the understanding that the Federal Government retained control over its

10 dissemination.

11     51.    The Federal Government maintains an ownership interest in documents such as

12 reports, presentations, minutes, and other non-email documents created by the federal

13 agencies and retained its property interest in the records when it shared the records with the

14 County.

15     52.    Courts have recognized that the United States has the authority to enforce its

16 property interest in its records.  *United States v. Napper*, 887 F.2d 1528, 1530 (11th Cir.

17 1989) (federal interest in control of information recognized, and city ordered to return records

18 to the FBI notwithstanding contrary obligation under state public disclosure law).  The facts

19 here are similar.  The Federal Agencies retained a non-disclosure interest in the records

20 exchanged with the Defendants, precluding Defendants from disclosing such records.

21     53.    The United States is therefore entitled to a declaration that the CISI at issue in

22 this case is subject to the control of the Department of Defense, and the County should be

23 enjoined from releasing any and all sensitive national security information exchanged with

24 Kitsap Emergency Management without the express permission of the Navy.

25                          **FIFTH CAUSE OF ACTION**
                          *Common Law Duty of Confidentiality*
26

27     54.    The United States realleges and incorporates by reference the allegations

28 contained in paragraphs 1 through 53 of this Complaint.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

55.     Kitsap Emergency Management's participation in the NUWAIXs was expressly conditioned on its willingness to maintain the confidentiality of the information received from the Federal Agencies, and was specifically conditioned on its agreement that "[p]ublic release of the exercise material to third parties is at the discretion of the NRNW."  All such information was provided to the County by the Federal Agencies with the express understanding that it would only be used for the purpose for which it was disclosed absent the express permission of the Navy.

57.     Under federal common law, these express and implied understandings and the Federal Agencies reliance on them, create a duty of confidentiality enforceable in equity, similar the confidentiality obligations which adhere government professionals such as security officers, *see e.g., Snepp v. United States*, 445 U.S. 972 (1980), or in the private sector, to insurance companies, *see Hammons v. Aetna Casualty & Sec. Co.,* 243 F.Supp. 793 (1965); *see generally* Alan B. Vickery, Note, Breach of Confidence: An Emerging Tort, 82 Colum. L. Rev. 1426 (1982).

58.     The Federal Agencies are therefore entitled to injunctive relief to enforce the County's confidentiality obligations not to disclose sensitive national security information to the public without the express permission of the Navy.

## SIXTH CAUSE OF ACTION
### *Declaratory Judgment*

59.     The United States realleges and incorporates by reference the allegations contained in paragraphs 1 through 58 of this Complaint.

60. As an actual, substantial and justiciable controversy exists between the United States and Defendants regarding their respective obligations, the United States seeks a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring any information determined by the Department of Defense or the Navy to be UCNI or CISI is exempt from the PRA; and declaring any records containing CISI are subject to the Freedom of Information Act, not the PRA, and cannot be released by the County without the express permission of the Department of Defense.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
## PRAYER FOR RELIEF
4
WHEREFORE, the United States prays that judgment be entered in its favor and
5
against Defendants as follows:
6
    1.  On the first cause of action, for an order permanently enjoining Defendants from
7
        releasing the national security information at issue in this case.
8
    2.  On the second cause of action, for an order permanently enjoining Defendants from
9
        releasing the UNCI at issue in this case.
10
    3.  On the third cause of action, for an order permanently enjoining Defendants from
11
        releasing the CISI at issue in this case.
12
    4.  On the fourth cause of action, for an order directing Defendants to deliver to the
13
        Federal Agencies all records and copies of records determined to have a federal
14
        ownership interest in this case.
15
    5.  On the fifth cause of action, for an order permanently enjoining Defendants from
16
        releasing any of the confidential information at issue in this case.
17
    6.  On the sixth cause of action, for an order declaring any information determined by
18
        the Department of Defense or the Navy to be UCNI or CISI is exempt from the
19
        PRA and any records containing CISI are subject to the Freedom of Information
20
        Act, not the PRA, and cannot be released without the express permission of the
21
        Department of Defense.
22
23
24
25
26
27
28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3        DATED this 14th day of December, 2015.

4                                          Respectfully submitted,

5                                          ANNETTE L. HAYES
6                                          United States Attorney

7

8                                          s/ Peter A. Winn
9                                          PETER A. WINN, WSBA#34701
                                           KAYLA STAHMAN, CA# 228931
10                                         Assistant United States Attorney
11                                         United States Attorney's Office
                                           700 Stewart Street, Suite 5220
12                                         Seattle, Washington 98101-1271
                                           Phone:  206-553-7970
13                                         Fax:     206-553-4067
14                                         E-mail:  Peter.Winn@usdoj.gov
                                           E-mail:  kayla.stahman@udsdoj.gov
15

16

17

18

19

20

21

22

23

24

25

26

27

28